TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
CHRISTIAN R. ACEVEDO (Cal. Bar No. 323718)
Special Assistant U.S. Attorney
Riverside Branch Office
     3403 10th Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6922
     Facsimile: (951) 276-6202
     E-mail:    christian.acevedo@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 20-148-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Sentencing Date: April 29, 2021<br>Sentencing Time: 11:00 a.m. |
| WILLIAM JOSEPH IHRKE, | Sentencing Location: Courtroom of the Honorable Fernando M. Olguin |
| Defendant. | |

Plaintiff, United States of America, by and through its attorney of record, the Acting United States Attorney for the Central District of California, and Special Assistant United States Attorney Christian R. Acevedo, hereby files its Sentencing Position.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, the United States Probation Office's Presentence Investigation Report and such further evidence and argument as the Court may permit.

Dated: April 12, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office


*/s/ Christian R. Acevedo*
CHRISTIAN R. ACEVEDO
Special Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant William Joseph Ihrke ("defendant") shamelessly increased his community's exposure to a tragic and widespread national opioid crisis.  His decision to traffic large quantities of opioids and other drugs cannot be ignored.  Accordingly, the government respectfully requests the Court sentence defendant to a sentence of 12 months in prison to be followed by a 3-year term of supervised release, and a $100 special assessment.  This sentence is warranted based on the defendant's sophisticated means of exposing his community to the danger of drugs, and his brazen decision to exploit the United States Postal Service ("USPS") to do it.

**II.  STATEMENT OF FACTS**

Beginning on an unknown date, and continuing until on or about March 5, 2020, in San Bernardino County, California, and elsewhere, defendant and his co-conspirators, Marlo Dunbar and Thomas O'Meara, agreed to knowingly possess with intent to distribute, and distribute, the following controlled substances: (i) Oxycodone, a Schedule II narcotic drug controlled substance; (ii) Hydrocodone, a Schedule II narcotic drug controlled substance; (iii) Cocaine, a Schedule II narcotic drug controlled substance; and (iv) 3,4-Methylenedioxyamphetamine ("MDMA" or "ecstasy"), a Schedule I controlled substance.  (Plea Agreement, ECF No. 48, ¶ 12.)

The objects of the conspiracy were accomplished, in substance, as follows: (1) Dunbar would obtain controlled substances, including oxycodone, hydrocodone, cocaine, and MDMA, from a co-conspirator; (2) defendant and O'Meara would send Dunbar money using a digital money transfer platform; (3) Dunbar would place the controlled

substances, including oxycodone, hydrocodone, cocaine, and MDMA, inside of an envelope or DVD case and take the envelope or DVD case to a United States Post Office; (4) Dunbar would package the envelope or DVD case containing the controlled substances, including oxycodone, hydrocodone, cocaine, and MDMA, in a USPS Priority Mail envelope and ship the envelope to defendant's and O'Meara's home addresses using a shipping service that included a tracking number; (5) Dunbar would provide defendant and O'Meara with the tracking number for the envelope; (6) defendant and O'Meara would thereafter use the internet or telephone to ask the United States Post Office when the parcel would arrive, utilizing the same telephone number for both of their parcels; (7) Defendant and O'Meara would together coordinate receipt of the parcels and would thereafter possess the controlled substances for further distribution.  Id.

In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendant and coconspirators committed various overt acts in San Bernardino County, including, but not limited to, the following:

On or about January 8, 2020, defendant sent Dunbar $680 using the Zelle digital money transfer platform.  Id.

On or about January 21, 2020, defendant sent Dunbar $800 using the Zelle digital money transfer platform.  Id.

On or about January 24, 2020, defendant used the USPS parcel tracking service to inquire about the status of the parcel that Dunbar had shipped on January 21, 2020, providing the same phone number ending in 4321 which co-conspirator O'Meara had provided to the USPS on or about January 14, 2020 to check on the status of a parcel.  Id.

4

On or about February 27, 2020, defendant sent Dunbar $1,000 using the Zelle digital money transfer platform. Id.

On or about February 28, 2020, defendant sent Dunbar $1,200 using the Zelle digital money transfer platform. Id.

On or about March 5, 2020, defendant used the USPS parcel tracking service to inquire about the status of the parcel that co-conspirator Dunbar had shipped on March 3, 2020. Id.

In total, between January 8, 2020 and March 3, 2020, Dunbar shipped at least 2,680 milligrams of oxycodone, 4,380 milligrams of hydrocodone, 181.6 milligrams of MDMA, and 27.97 grams of cocaine to defendant's and O'Meara's homes in Minnesota. In total, between September 2018 and March 2020, Dunbar mailed parcels containing controlled substances to O'Meara at least 11 different times, and to defendant at least 20 different times. During the same period, O'Meara wire transferred at least $5,575 to defendant in total, and defendant wire transferred at least $35,525 to defendant in total. Defendant and O'Meara worked together to receive the shipments of controlled substances. When O'Meara received the controlled substances, he intended to distribute the controlled substances to at least one other person, knowing they were controlled substances. When defendant received his shipments of controlled substances, he also intended to distribute the controlled substances to at least one other person, knowing they were controlled substances. Id.

**III. GUIDELINES CALCULATION: RANGE OF 21-27 MONTHS**

On March 25, 2021, the United States Probation Office ("USPO") disclosed its Presentence Report ("PSR"), calculating a Guidelines range of 21 to 27 months of imprisonment based on a total offense level of 15 and a criminal history category of II. (PSR ¶ 91.) The

government concurs with the USPO's calculation of the defendant's criminal history and corresponding Guidelines range.

**IV.  GOVERNMENT'S RECOMMENDED SENTENCE:   12 MONTHS' IMPRISONMENT AND 3 YEARS OF SUPERVISED RELEASE**

The Sentencing Guidelines are the "starting point and the initial benchmark" for sentencing. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008). After calculating the Guidelines range, the Court must consider "the nature and circumstances of the offense," and "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court should then consider the need for the sentence imposed to:

> (A) reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from defendant's further crime; and
>
> (D) to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  The Court should impose a sentence that is sufficient, but not greater than necessary to satisfy these statutorily prescribed sentencing objectives.  18 U.S.C. § 3553(a).

**A.  12 Months in Prison is Appropriate Based on Defendant's Demonstrated Indifference to his Community's Well-Being**

A court should consider the nature and circumstances of the offense and the history and characteristics of defendant. See 18 U.S.C. § 3553(a)(1). A sentence of 12 months is appropriate because defendant flagrantly exposed his community to the world of opioids and other drugs.

Defendant has some history of offenses related to substance abuse. In April 2006, he was sentenced to 90 days in jail and six years of probation for a hit and run incident where he hit a parked car while intoxicated with over .08 percent alcohol in his system. (PSR ¶ 48.) Just over three years after that in August 2009, defendant received a $580 fine for another alcohol related incident where he was driving under the influence. (PSR ¶ 50.) Yet again, three months after that, in November 2009, defendant received another $580 fine for driving under the influence of alcohol. (PSR ¶ 49.) In March 2013, defendant was sentenced to six months in jail (which was suspended) for the same conduct – driving under the influence of alcohol. On this occasion, defendant hit two cars in a parking lot while he was under the influence of alcohol. (PSR ¶ 51.) Yet again, in May 2014, defendant received a $230 fine for careless driving when he was caught driving under the influence of alcohol again. (PSR ¶ 52.)

The sheer number of convictions for intoxicated driving suggests that defendant has no regard for the safety of others and is unwilling to learn from prior conduct. It would be one thing if defendant truly suffered from alcohol addiction and was a victim of medical circumstances. That is not the case. As defendant himself reported, he does not believe he requires alcohol treatment. (PSR ¶ 70.) This suggests that defendant, rather than use alcohol responsibly, chose time after time to use it irresponsibly. Yet, it was not enough for defendant to expose his community to his intoxicated driving. Now, defendant has upped the ante by introducing his community to the danger of opioids and drugs. Rather than try to prevent his community from being exposed to drugs,

defendant sought to distribute it to others in his community and bring the world of drugs to them.

To his credit, and as evidence in mitigation, defendant informed the government he intended to plead guilty well before the trial date, which "permitted the government to avoid preparing for trial and permitted the government and the court to allocate resources efficiently." See U.S.S.G. §3E1.1(b). Also, because defendant agreed to proceed with the remainder of his case over video teleconference and telephone, rather than appearing in person, he has chosen to help prevent the spread of COVID-19. The government, accordingly, recommends a downward variance for defendant, after taking into account his timely acceptance of responsibility during the ongoing COVID-19 pandemic.

Given defendant's early acceptance of responsibility and willingness to mitigate COVID-19 spread through virtual appearances, a sentence of 12 months of imprisonment is an appropriate sentence.

### B.  Opioids Are Hurting More and More American Communities

Opioids, to include the oxycodone and hydrocodone defendant was buying and distributing in his community, are highly addictive. The addictive nature of these drugs can lead unsuspecting users to overdose and die. See https://www.cdc.gov/drugoverdose/opioids/prescribed.html (accessed April 7, 2021).

Moreover, the problem is widespread and growing by the day in the United States. Deaths from drug overdoses increased more than four times between 1999 and 2017. In 2017, more than 70,000 people died from drug overdoses, making it a leading cause of injury-related death in the United States. Of those deaths, about 68 percent involved a prescription or illicit opioid. See CDC's Response to the

Opioid Overdose Epidemic. https://www.cdc.gov/opioids/strategy.html (accessed April 7, 2021).

The opioids defendant was peddling are an extension of his callous disregard for his community's safety. That he so flagrantly brought the drugs into his community through the use of a public service like the Postal Service shows that he valued his own selfish desires above the safety of our public employees and above the safety of his fellow citizens, and his punishment must reflect that.

### C. Unwarranted Disparities in Sentencing Can be Avoided by Imposing a Guidelines Range Sentence

The Court should minimize sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6). One way courts ensure consistent sentences for similarly situated defendants across the country is by applying the Guidelines uniformly. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); see also Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Sentencing Guidelines ranges."). A Guidelines-range sentence is reasonable even where a defendant has endured challenges in life or has struggled with substance abuse. United States v. Carter, 560 F.3d 1107, 1121-22 (9th Cir. 2009) (finding the imposition of a within-Guidelines sentence reasonable despite defendant's youth, prior non-violent criminal history, and difficult childhood because nothing about those circumstances placed the defendant outside the heartland of similar characteristics and

9

circumstances contemplated by the Guidelines); United States v. Stoterau, 524 F.3d 988, 1001-02 (9th Cir. 2008) (finding the imposition of within-Guidelines sentence reasonable because abuse defendant "suffered as a child, his mental health issues, and his life-long struggle with methamphetamine addiction" did not constitute special circumstances compelling a downward variance).

COVID-19 presents a unique circumstance where additional variance from the Guidelines is warranted.  A sentence of 12 months goes a step further than the calculated Guidelines range because defendant has demonstrated a clear commitment to keeping his community safe from COVID-19 exposure.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 12 months' imprisonment followed by a 3-year term of supervised release, and a $100 special assessment.